## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Omran Abdul-Khaliq,

     Plaintiff,

                          **Case No. C2-04-183**
v.                         **JUDGE SMITH**
                          **Magistrate Judge Kemp**

City of Newark, *et al.*,

     Defendants.

### OPINION AND ORDER

     Plaintiff Omran Abdul-Khaliq asserts federal claims under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights.  Specifically, Plaintiff contends that Defendants the City of Newark and Patrolmen Art Minton, Eric Cook, and Kyle Gross violated his constitutional rights when they arrested Plaintiff at his home for disorderly conduct.

     Defendants filed a Motion for Summary Judgment on all claims asserted by Plaintiff (Doc. 41).  Plaintiff filed his response in opposition (Doc. 52), and Defendants then filed their Reply (Doc. 61).  Then, Plaintiff moved to strike part of Defendants' Reply, or in the alternative, to file a sur-reply (Doc. 63).  That motion was also fully briefed and both motions are now ripe for review.  For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion to Strike.

### I.  FACTS

     The Plaintiff, Mr. Omran Abdul-Khaliq, is an African-American Muslim and resident of Newark, Ohio.  Plaintiff resides at 924 Glenmore Avenue, Newark, Ohio with his girlfriend

Melinda Fairburn and their six year old son.  Defendants Arthur Minton, Eric Cook and Kyle Gross are employed as police patrolmen with the City of Newark.

One March 4, 2003, Newark Police Dispatch received a 911 call of a home invasion and child abduction at 924 Glenmore Avenue (Plaintiff's residence).  Dispatch noticed Defendants, Officers Gross, Minton, and Cook, to respond to the call.  Officers Gross, Minton, and Cook arrived at the address and began questioning witnesses.  Officer Gross, who arrived first, questioned a woman who was standing in the street, Naomi Wilder.  Officers Cook and Gross then questioned Ms. Fairburn regarding the incident. She explained that four armed males entered their home, demanded money, and went through the house.  She further explained that her child had not been abducted.  She also gave the officers a description of the vehicle that the invaders had driven away in and Officer Gross notified Dispatch to have all units looking for this vehicle.

When the home invaders left Plaintiff's residence, Plaintiff called the police, then he chased them in his car.  Plaintiff, however, could not catch them and returned home.  Upon returning home, Plaintiff claims that he was confronted by Defendant Cook outside of his residence and falsely accused of having a gun.  Defendant Gross, however, discussed the possibility of Plaintiff having a gun with the witness Ms. Wilder and Plaintiff's girlfriend. Plaintiff claims that he became upset with the way he was treated, especially because he had just been the victim of a home invasion.

The officers attempted to pat Plaintiff down, but he repeatedly refused.  Plaintiff was yelling, cursing and refusing to cooperate.  Officer Cook then ordered Plaintiff to place his hands on the car directly behind him, but again he repeatedly refused.  Plaintiff then stepped backwards

2

and lifted his jacket.  The officers described this action as a defensive and aggressive posture. Fearing Plaintiff may be drawing a weapon, Officer Cook administered a small dose of pepper spray.  Plaintiff describes the situation, "before I know it, I'm yelling back and forth, they're yelling back at me, where's the gun, where's the gun.  It's like I ain't got no fucking gun.  The next thing I know, I'm opening my coat [trying to say] what gun, what gun.  But, I got sprayed with mace."  (Khaliq Depo. pp. 77-78).

Defendants Gross and Cook then grabbed Plaintiff, took him to the ground, and handcuffed him.  Plaintiff claims that he was searched for no reason.  He further claims that he could not breathe or see and asked for something to wash out his eyes.  He was not given anything until after he had been taken to the police station.  Defendant Cook transported Plaintiff to the Newark Police Department to process his arrest.  Plaintiff was charged with disorderly conduct and possessing a weapon under disability.

Defendant Minton searched the scene for further evidence and found a gun in the snow some ways from Khaliq's house.  Defendant Cook also found a bag of crack cocaine in the ashtray in the back of his police cruiser after Khaliq was transported to the County Jail. Consequently, Plaintiff Khaliq was also charged with possession of cocaine and tampering with evidence.  The charges of disorderly conduct and possessing a weapon under disability were eventually dropped.  A grand jury indicted Plaintiff for possession of cocaine and tampering with evidence, however, a jury unanimously acquitted him of those charges at trial.

Defendant Gross continued trying to investigate the home invasion. He asked Plaintiff about the men who entered his home but he refused to offer any assistance.  Officer Gross took written statements from both Ms. Wilder and Ms. Fairburn and took photographs of Plaintiff's

house.  The surrounding area was also searched to see if the invaders dropped anything.

Defendant Gross also returned back to Plaintiff's residence later that night to ask Ms. Fairburn if

she would be willing to describe the invaders to a police sketch artist.  She said that she could

not.

Prior to Plaintiff's trial, he was released on bond and placed on house arrest.  Plaintiff

claims that this incident, and overall being arrested for a crime he did not commit, caused him

emotional distress.  Plaintiff also claims that a copy of his NCIC report was illegally given to the

Newark Advocate and information from that report was published in an article about him on

March 7, 2003.  In the article, Plaintiff was accused of being a drug dealer and he claims that his

reputation was ruined as a result.

Plaintiff also alleges numerous other facts to insinuate that the Newark Police

Department is racist, such as Newark's police personnel have used the word nigger, they have

only ever had one African-American police officer, and that they have a practice of

discriminating against other African-Americans.

## II.  SUMMARY JUDGMENT

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which

provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate,

however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[1]   The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Id.*  Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby*, *Celotex*, and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not

---

[1]   *Reeves* involved a motion judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56.  Nonetheless, standards applied to both kinds of motions are substantially the same.  One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150.  In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

necessarily inappropriate for summary judgment.  *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257).  The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion.  *Id.*  It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'"  *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Id.* at 1479-80.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III.  ANALYSIS

The Court will first address Plaintiff's Motion to Strike Part of Defendants' Reply before addressing the substantive issues in Defendants' Motion for Summary Judgment.

**A.     Plaintiff's Motion to Strike Part of Defendants' Reply**

Plaintiff moves to strike the part of Defendants' Reply Memorandum that relates to Plaintiff's claim that Defendants violated the Fourth Amendment prohibition against unlawful seizure by using excessive force, or in the alternative, Plaintiff requests leave to file a sur-reply memorandum.  Plaintiff argues that Defendants did not argue in their Motion for Summary Judgment that summary judgment should be granted against Plaintiff on the excessive use of

6

force claim.  Plaintiff asserts that he assumed Defendants were not attempting to obtain summary judgment on his Fourth Amendment excessive use of force claim and therefore Plaintiff noted this in his Memorandum in Opposition.  Defendants then argued in their Reply that if Plaintiff intended to plead such claim, they were entitled to summary judgment on that claim as well.

Defendants argue in opposition to Plaintiff's Motion to Strike that Plaintiff's Complaint does not plead a cause of action for excessive use of force.  Defendants argue that Plaintiff plead three distinct federal causes of action, as well as a number of specific state causes of action, but does not mention excessive force.

Plaintiff appears to be arguing that his claim for excessive force is encompassed in the facts of the Complaint, specifically Paragraph 9 where he states that "Defendants used excessive force in seizing and arresting the plaintiff."  Plaintiff then attempts to tie this factual statement to the claim asserted in paragraph 19 that Plaintiff has the right to be free from unreasonable seizure.  Plaintiff appears to be attempting to claim that "unlawful seizure" and "use of excessive force" are synonymous, thereby attempting to create two separate causes of action.

The Court agrees with Plaintiff's argument that Defendants, the movants, bear the initial responsibility of informing the court of the basis for its motion.  However, it is Plaintiff that first has to put Defendants on notice of what claims he is asserting.  The Court has carefully reviewed the briefs on this issue and Plaintiff's Complaint and finds Defendants' arguments persuasive. Plaintiff's detailed Complaint contains 33 numbered paragraphs, including 10 specific counts in bold headings.  While Plaintiff mentions excessive force in the facts portion of the Complaint, it is not specifically listed as a count, nor even mentioned in one of the 10 specific counts that are listed.  Therefore, the Court finds that Plaintiff has failed to plead a claim for excessive force and

any arguments on this issue shall be disregarded.  Accordingly, there is no need to strike any

arguments on this issue, and therefore, Plaintiff's Motion to Strike is **DENIED**.

Even if, however, the Court were to find the excessive force claim properly plead, that

claim would not survive summary judgment for the reasons set forth in Section III.B.2.c, *infra*.

**B.      Plaintiff's Federal Claims**

Plaintiff maintains that Defendants, the City of Newark and Officers Cook, Minton, and

Gross, violated his federal constitutional rights when he was arrested without probable cause.

Plaintiff ostensibly brings this action under 42 U.S.C. § 1983, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress, . . .

*Id.*  To prevail on a claim under § 1983, a plaintiff must prove: (1) that the defendant acted under

color of law; and (2) that the defendant deprived the plaintiff of a right secured by the U.S.

Constitution or federal statute.  *See Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th

Cir. 2003).

**1.      Equal Protection Claim**

Plaintiff alleges that Defendants "acted under color of state law to discriminate against

Plaintiff on account of his race and color, black African-American, which deprived him of his

14th Amendment right to Equal Protection under the law, in violation of 42 U.S.C. § 1983."

(Compl. ¶ 17).

The Equal Protection Clause of the Fourteenth Amendment requires that no state shall

"deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend.

XIV, §1.  Under the Equal Protection Clause, a state cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference.  *Vacco v. Quill*, 521 U.S. 793, 799 (1997).

Defendants argue in their initial Motion that Plaintiff has failed to state any specific way that Officers Gross, Cook, and Minton treated him any differently than others similarly situated without any rational basis or that they burdened a fundamental right.  In fact, Plaintiff and the witness, Plaintiff's girlfriend Ms. Fairburn, failed to provide any specific details how race played any part in the incident with Plaintiff.

Despite pleading anything more specific than just an Equal Protection claim, in his Memorandum in Opposition, Plaintiff argues that he has a claim for selective enforcement.  The Sixth Circuit standard to establish a claim for selective enforcement is that plaintiff must prove "that the challenged law enforcement practice 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'"  *Farm Labor Organizing Committee v. Ohio State Highway Patrol*, 308 F.3d 523, 533-34 (6th Cir. 2002).  However, there is a "strong presumption" that police officers have properly discharged their duties and only "clear evidence" to the contrary will overcome this presumption.  *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997).  The *Stemler* Court further stated that a valid claim for selective enforcement is rare.  *Id.*

The requirements for a selective enforcement claim "draw on ordinary equal protection standards."  *United States v. Armstrong*, 517 U.S. 456, 463 (1996).  In order to establish such a claim, a plaintiff must demonstrate the following three elements: "First, [the officer] must single out a person belonging to an identifiable group, such as those of a particular race or religion.

Second, he must initiate the prosecution with a discriminatory purpose; and finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to." *Stemler*, 126 F.3d at 873.

Plaintiff argues that he was treated differently than a similarly situated white person, his girlfriend Melinda Fairburn.  The parties agree, at least as a starting point, that the relevant category of similarly situated persons are those who presented a potential danger to the officers by having a gun.  Plaintiff argues that the officers had more reason to believe that Ms. Fairburn had a gun than Plaintiff based on the comment by Ms. Wilder to Defendant Gross.  Defendants argue, however, that the actions of Plaintiff and Ms. Fairburn differ dramatically.  Ms. Fairburn calmly answered all of the officers questions, including whether she had a gun, while Plaintiff was aggressive and uncooperative.  Ms. Fairburn offered to be searched, while Plaintiff did not and even refused.  Based on the differences in the actions by Plaintiff and Ms. Fairburn, the Court agrees with Defendants that Plaintiff has failed to establish the first requirement that he was similarly situated to Ms. Fairburn.

Even if Plaintiff had established that he was similarly situated to Ms. Fairburn, Defendants further argue that he cannot establish a discriminatory purpose.  Plaintiff argues that Defendants acted with a discriminatory purpose because Officers Gross and Cook confronted him about possessing a gun and not his Caucasian girlfriend.  Plaintiff also claims a discriminatory purpose can be inferred based on prior acts of alleged discrimination by the Newark Police Department.  (Pl.'s Mem. in Opp. at 40-42).

To satisfy the second element of a selective enforcement claim, a plaintiff must establish that either (a) the officer distinguished between the plaintiff and a similarly situated individual

10

based on some bad reason, proving intent; or (b) the officer had no rational reason to distinguish between the plaintiff and similarly situated individuals. *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004)(discriminatory purpose not shown where officers chose to restrain a man involved in an altercation with an off-duty officer before restraining the off-duty officer).

In this case, Plaintiff cannot establish a discriminatory purpose because both he and the person he claims to be similarly situated, Ms. Fairburn, were questioned about the gun and subject to search. It was Plaintiff's subsequent actions that provided Officers Cook and Gross with a rational reason to treat Plaintiff differently from Fairburn. Plaintiff would like this Court to infer that the officers in this case acted with a discriminatory purpose based on other events that he asserts were discriminatory, even events involving the conduct of other officers. The Court, however, does not find any of the other acts relevant to the actions by the officers in this case. Plaintiff simply has not offered any evidence that is sufficient to overcome the strong presumption that officers Cook, Gross, and Minton properly discharged their duties, and did not act with selective enforcement.

After finding that Plaintiff has failed to establish the first two elements of a selective enforcement claim, the Court does not find it necessary to address whether Plaintiff has established the third element, a discriminatory effect. Defendants are therefore entitled to summary judgment on Plaintiff's first claim, equal protection and/or selective enforcement.

### 2.     Unreasonable Seizure and Malicious Prosecution

Plaintiff asserts in his Complaint that "Defendants...acted under color of state law in

violating plaintiff's right to be free from unreasonable seizures."  Defendants argue, however, that they are entitled to summary judgment on this claim because the officers had probable cause to arrest Plaintiff.

### a.    Probable cause to arrest Plaintiff

The test for determining whether a police officer had probable cause to arrest is whether, at the time of the arrest, "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Diamond v. Howd*, 288 F.3d 932, 936 (6th Cir. 2002)(*citing Beck v. Ohio*, 379 U.S. 89, 91 (1964).  Another consideration is whether the "'factual and practical considerations of every day life' could lead a reasonable person to believe that there is a probability that an illegal act has occurred or is about to occur." *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998)(*citing Illinois v. Gates*, 462 U.S. 213, 231 (1983)).

In making the decision whether to arrest, "[o]fficers are not required to rule out every possible explanation other than the suspect's illegal conduct before making an arrest." *United States v. Reed*, 220 F.3d 476, 478 (6th Cir. 2000).  A duty to investigate is not part of the probable cause determination.  *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988).  Nor are officers required to "prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003).

Plaintiff, in this case, was originally arrested for disorderly conduct and later charged with additional offenses.  As stated above, the officers only needed to have probable cause to

believe an illegal act had occurred or was going to occur.  Plaintiff admits that he yelled at the officers when they inquired as to whether he had a gun and that he opened his coat to show the officers he was not carrying a firearm. Plaintiff, however, claims that he was merely trying to tell and show the officers that he did not have a gun.  Plaintiff appears to be arguing that he was acting rational.   It does not matter, however, what Plaintiff claims as the officers were "under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."  *Criss*, 867 F.2d at 263.

The Court, relying solely on Plaintiff's description of the encounter, and not taking into account the facts provided by the officer, concludes that the officers had probable cause to arrest Plaintiff.  Plaintiff was swearing at the officers, and therefore not cooperating with them.  Further, when Plaintiff opened his coat, that could be viewed as an offensive move, such as reaching for a gun and therefore a potential threat to the officers.  In the case at bar, Defendants did not have any knowledge as to whether or not Plaintiff had a gun, but were merely inquiring.  He could have acted rationally and answered as Ms. Fairburn had.  Nonetheless, Defendants did not have any duty to further investigate the threats, but it is sufficient if they believed Plaintiff was acting in a threatening manner.  The officers therefore had a reasonable belief that Plaintiff was acting disorderly, which consists of recklessly causing inconvenience, annoyance, or alarm to another by: (1) engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior.  *See* Ohio Rev. Code §2917.11.  Based on Plaintiff's disregard for the law, Defendants had probable cause to arrest him for disorderly conduct and therefore did not violate Plaintiff's constitutional rights.

**b.  Malicious Prosecution**

Plaintiff asserts in his Complaint that "Defendants actions also constitute malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution." (Compl. ¶19).  Although the Sixth Circuit recognizes a claim of malicious prosecution under the Fourth Amendment, they have yet to resolve the elements of such a claim.  "[I]t is clear that a plaintiff must show, at a minimum, that there was no probable cause to justify arrest and prosecution."  *Griffin v. City of Heath*, Ohio, 2006 U.S. Dist. LEXIS 23468 (S.D. Ohio Mar. 21 2005).

Based on the Court's conclusion that there was probable cause to arrest Plaintiff, no further discussion is necessary regarding Plaintiff's malicious prosecution claim.  Defendants are therefore entitled to summary judgment on Plaintiff's federal malicious prosecution claim.

**c.  Excessive Force**

Although the Court previously addressed this issue in regards to the Motion to Strike, the Court finds that even if Defendants arguments were to be considered, and Plaintiff were permitted to file the sur-reply on the excessive force argument, Defendants would still be entitled to summary judgment.

Claims regarding police officers' use of excessive force in the course of an arrest or other seizure are governed by the Fourth Amendment. *See Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002)(*citing Graham v. Connor*, 490 U.S. 386, 395 (1989)). The Fourth Amendment requires that an officer's use of force be objectively reasonable, and courts must balance the consequences to the individual against the government's interests in effecting the seizure. *See Graham*, 490 U.S. at 396.  This standard contains a built-in measure of deference to the officer's

on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case.  *Id.* at 396.  "[R]easonableness must be evaluated from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight."  *Id.*  Courts evaluating the reasonableness of force used "should pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001)(*quoting Graham*, 490 U.S. at 396).

In determining the "reasonableness" of the officer's use of force, courts must perform a "careful balancing of the 'nature and intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  *Id.* (*quoting Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  "Reasonableness," in an excessive force case, is based on an objective standard, and thus, one must consider "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  One must also consider the fact that police officers are often forced to make split-second decisions in situations that are often tense, uncertain, and quickly evolving.  *Id.* at 397.

Further, the Court held that "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed."  *Id.*  Thus, the Court held that a "gratuitously violent shove," in the context of the case, was held not to violate a clearly established constitutional right and as such, petitioner was entitled to qualified immunity.  *Id.* at 208.

Plaintiff argues that the alleged crime in this case, disorderly conduct, was not severe and

15

therefore did not justify the use of pepper spray and slamming him to the ground.  Despite asserting excessive force in his Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiff does not claim that he suffered any physical injuries, other than seeking something to wipe his eyes with.

Even construing the facts in Plaintiff's favor, however, the Court finds that the use of pepper spray and Plaintiff being thrown to the ground does not rise to the level of a § 1983 claim of excessive force in violation of the Fourth Amendment.  Plaintiff admits that he was not cooperating with the officers by refusing to be searched and swearing at them.  A reasonable officer in the same situation as Defendants would have believed that Plaintiff posed a potential threat to the officers and needed to be subdued.  Specifically, Plaintiff refused to be searched and the movement of opening his coat, could be seen as threatening.  Therefore, in that situation, the officers were justified in using force.

Plaintiff has failed to meet his burden in establishing a § 1983 claim of excessive force in violation of the Fourth Amendment.  The officers had an objectively reasonable perception of danger that entitled them to secure Plaintiff.  Plaintiff, however, instead of cooperating with the officers became irate. Therefore, the officers reasonable use of force to detain Plaintiff was constitutionally permissible.

### 3. Federal claims against the City of Newark

The City of Newark is named as a Defendant in this action, however, the Complaint does not specify what exactly the City of Newark did to violate Plaintiff's constitutional rights.  The Complaint merely alleges "Defendants conduct violated his constitutional rights under the Fourth and Fourteenth Amendments."  (Compl. ¶¶ 17 and 19).  Defendants argue that they are

16

entitled to summary judgment on any and all claims asserted against the City of Newark.

Municipalities and other local government units can be sued under 42 U.S.C. § 1983.
*Monnell v. Department of Social Services*, 436 U.S. 658 (1978). A municipality, however, cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory. *Id.* at 691. The City of Newark therefore cannot be held liable simply as an employer of the officers named individually in this case, but instead, must have caused the constitutional violations asserted by Plaintiff through the execution of a governmental policy or custom. *Id.* The Sixth Circuit has stated that to satisfy the *Monell* requirements, a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987).

Defendants argue that they are entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claims against the City of Newark[2] because the City does not have any unconstitutional policies or customs that are causally linked to Plaintiff claims. Further, Defendants argue that there is no evidence demonstrating that Plaintiff's alleged injuries were incurred because of the execution of a City of Newark custom or policy.

Plaintiff argues that the constitutional violations he alleges in this case were caused by the City of Newark's deliberate indifference to racial profiling and the racist activities of its

---

[2] Though Plaintiff does not specify whether the claims against the individually named Defendants are in their personal or official capacities, the Court has deemed the claims to be against each of them in both capacities. The aforementioned discussion applies to the individual officers in their personal capacities. Claims against a government officer in his or her official capacity are deemed claims against the government entity, therefore, those claims shall be addressed in conjunction with the claims against the City of Newark. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

officers.   Although not specifically outlined in the Complaint, Plaintiff also appears to be arguing that the City of Newark failed to adequately train and supervise the individually named officers.

Plaintiff, however, has failed to present any evidence that his alleged injuries were caused by a City of Newark custom or policy.  Nor has Plaintiff set forth any evidence that the officers' actions represent any City of Newark policy.  Plaintiff does set forth in his Memorandum in Opposition to Defendants' Motion for Summary Judgment several isolated incidents involving other officers employed by the City of Newark.  Defendants argue, however, that the record establishes that all prior allegations have had full investigations and officers were disciplined if necessary.  The Court finds that Plaintiff has failed to show a clear and persistent patter of unconstitutional activity.

The Court next turns to Plaintiff's argument that the City of Newark failed to adequately train and supervise the individually named Defendants and should therefore be held liable. "There are limited circumstances in which an allegation of 'failure to train' can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989).  To succeed on a failure to train claim, plaintiff must establish that the City acted with "deliberate indifference" to the rights of persons with whom the police came into contact. *Id.* at 388-389. Plaintiff, however, has not offered any specific evidence to prove the City of Newark acted with "deliberate indifference" to his rights and the evidence in the record does not support such an inference.

Plaintiff also appears to be asserting in his Memorandum in Opposition that the City of

Newark failed to thoroughly investigate the incident or discipline the Defendants involved, and by doing so, accepted or ratified the Defendants conduct.  A failure to discipline claim is similar to a failure to train claim in that both require a plaintiff to demonstrate "deliberate indifference" to his rights.  *Berry v. City of Detroit*, 25 F.3d 1342 (1994).  To meet this burden, a plaintiff must show a history of "widespread abuse that has been ignored by the City."  *Id.*  (*quoting Harris*, 489 U.S. at 378).  In the instant case, Plaintiff has not offered any evidence of widespread abuse by the City of Newark showing that its officers have a history of violating others' constitutional rights.  In addition, to prevail under a ratification theory, a plaintiff not only must show the City's investigation was deliberately indifferent to his rights, but also that the investigation was conducted in accordance with a pre-existing unconstitutional policy attributable to the municipal policymaker.  *City of Oklahoma v. Tuttle*, 471 U.S. 808 (1985).

Generally, proof of a single incident of unconstitutional activity is insufficient to impose liability under *Monell*, unless the incident was caused by an existing unconstitutional municipal policy.  Plaintiff has not provided any evidence of an pre-existing unconstitutional policy, nor has Plaintiff provided evidence that the investigation, was, in fact, unconstitutional.  The mere fact that Plaintiff disagrees with the outcome of the investigation does not amount to deliberate indifference and therefore Plaintiff has failed to establish that Defendant City of Newark failed to thoroughly investigate and discipline the individual Officers.  Defendants are therefore entitled to summary judgment on these issues.

Plaintiff has failed to set forth any evidence to prove the existence of any City of Newark policies or customs that violated his constitutional rights.  Therefore, the Court finds that the City of Newark does not have the policies or customs of failure to train, supervise, investigate or

discipline its officers.   For this reason, Defendants are entitled to summary judgment in their favor on Plaintiff's claims against the City of Newark.

**C.      Plaintiff's State Law Claims**

Plaintiff asserted state law claims for abuse of process, assault, battery, intentional infliction of emotional distress, false imprisonment, defamation, invasion of privacy, and malicious prosecution.  However, Plaintiff only asserts federal subject matter as the basis for this Court's jurisdiction.  Having granted summary judgment to the Defendants on the claims under which Plaintiff asserted federal subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

It is well settled that a District Court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all claims over which it possessed original jurisdiction.  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997).  Indeed, the Sixth Circuit has recognized that if all federal claims are dismissed before trial, remaining state claims generally should be dismissed.  *Id.*; *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992).  Therefore, pursuant to 28 U.S.C. §1367(c)(3) and (d), the Court will dismiss Plaintiff's state law claims against Defendants without prejudice.

**IV.    DISPOSITION**

For all of the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Strike (Doc. 63) and **GRANTS** Defendants' Motions for Summary Judgment (Doc. 41).

The Clerk shall remove Documents 41 and 63 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases.

**IT IS SO ORDERED.**

_____ **/s/ George C. Smith** _____
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**